IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Angela Regina Adams-English** § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 4:18-CV-00561 |
| **Harris County Clerk's Office,** § | |
| *Defendant.* § | |

**DEFENDANT HARRIS COUNTY'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE KEITH ELLISON:**

Defendant Harris County files this Motion for Summary Judgment as to Plaintiff's Third Amended Complaint [Doc. 23].

**NATURE AND STAGE OF PROCEEDINGS**

Plaintiff brought a Title VII of the Civil Rights Act of 1964 claim against the Harris County Clerk's Office on February 23, 2018, alleging that she was subjected to gender discrimination while employed by Harris County. The Original Complaint filed by Plaintiff is a form complaint entitled *Complaint for Employment Discrimination* [Doc. 1].

After two motions to dismiss were granted by the Court, on April 8, 2019, Plaintiff filed her Third Amended Complaint [Doc. 23]. Plaintiff alleges that she suffered three adverse employment actions because of her female gender in violation of Title VII: (1) written reprimand; (2) two day suspension; and (3) employment termination.[1] Plaintiff also alleges that she was the

---

[1] Exhibit F- Plaintiff's Response to Defendant's First Set of Interrogatories – response request for admission 3, page 5 of 11.

victim of retaliation because she filed a grievance for the written reprimand.[2] The alleged discrimination occurred while Robert Mark Antill was her supervisor in the Information Technology department of the Harris County Clerk's Office.[3] Plaintiff received a written reprimand for defective work and failure to follow office procedures on February 9, 2016.[4] She received a two day suspension on March 2, 2016 for insubordination, defective work, and failure to follow procedures.[5] Her employment was terminated on May 31, 2016 after additional work deficiencies were observed.[6]

The parties have exchanged written discovery since the Third Amended Complaint was filed, and Defendant Harris County ("Harris County") now moves for summary judgment.

## SUMMARY JUDGMENT EVIDENCE

Harris County relies on the following summary judgment evidence, and incorporates the following summary judgment into this motion as if fully set forth here.

Exhibit A – The Affidavit of Robert Mark Antill

    A1 – Warning Notice Report to Angela Adams-English dated February 9, 2016
    A2 – Warning Notice Report to Angela Adams-English dated March 2, 2016
    A3 – Dismissal Notice dated May 31, 2016 and supporting documents
    A4 – Letter of Resignation by Henry Helaire dated November 25, 2015
    A5 – Warning Notice Report to Dalia Hollimon dated December 7, 2015

Exhibit B – The Affidavit of Pedro Cordova

    B1 – Emails of Pedro Cordova and Angela Adams-English dated February 1, 2016
    B2 – Emails of Pedro Cordova and Angela Adams-English dated February 16, 17, 2016

Exhibit C – The Affidavit of Bob Reasoner

    C1 – Emails of Bob Reasoner dated February 1 and 10, 2016

---

[2] Doc. 23 page 5 and 10 of 45.
[3] Exhibit F – response to request for admission 1, page 5 of 11; Mr. Antill was hired as the Director of Information Technology Department on March 16, 2015, and was Plaintiff's supervisor from the date of his hiring until the termination of Plaintiff's employment on May 31, 2016.
[4] Exhibit A1 – Warning Notice Report dated February 9, 2016.
[5] Exhibit A2 – Warning Notice Report dated March 2, 2016.
[6] Exhibit A3 – Dismissal Notice dated May 31, 2016.

Exhibit D – The Affidavit of Mark Martinez

    D1 – Summary prepared by Mark Martinez

Exhibit E – The Affidavit of Darlene Johnson

Exhibit F – Angela Adams-English answers to interrogatories

Exhibit G – EEOC Charge of Discrimination dated March 22, 2016

Exhibit H – Affidavit of Forrest Royder

Exhibit I – Affidavit of Armando Chiu

## FACTUAL BACKGROUND

Plaintiff was employed by Harris County in the Information Technology department ("IT") of the County Clerk's Office ("CCO") until her employment termination on or about May 31, 2016.[7] Plaintiff worked in the Networking Team.[8] Between March 16, 2015 and May 31, 2016, Plaintiff's supervisor was Robert Mark Antill ("Mr. Antill"), who became the Director of IT on or about March 16, 2015.[9] IT was tasked with supporting 340 desktops, 2400 iPads, three data-centers and 11 satellite offices of the CCO.[10]

Plaintiff's duties included system maintenance and administration, which involved implementation, maintenance and monitoring of the CCO's network Active Directory servers and configuration and maintenance of its domain controllers.[11]

On or about January 2016, the CCO experienced domain controller issues preventing a number of CCO employees from logging into their workstations.[12] It was Plaintiff's duty to

---

[7] Exhibit A – Affidavit of Robert Mark Antill, ¶ 3.
[8] Exhibit A, ¶ 3.
[9] Exhibit A, ¶ 2, 3.
[10] Exhibit A, ¶ 2.
[11] Exhibit A, ¶ 3.
[12] Exhibit A, ¶ 4; Exhibit D – Affidavit of Mark Martinez, ¶ 3; Exhibit B – Affidavit of Pedro Cordova, ¶ 3.

resolve the issues.[13] Unable to resolve the problems, Plaintiff consulted with the Harris County's Central Technology Services ("CTS").[14] CTS provides overall information technology support to all Harris County departments.[15] Pedro Cordova ("Mr. Cordova") of CTS assisted Plaintiff.[16]

On February 1, 2016, without first obtaining approval from her supervisors, Plaintiff asked CTS to open a Microsoft help desk ticket.[17] Because opening a Microsoft ticket costs money, CTS' Manager of Infrastructure Service Bob Reasoner ("Mr. Reasoner") contacted IT on whether or not IT was authorizing the expenditure.[18] Mr. Reasoner spoke with IT Assistant Director Mark Martinez ("Mr. Martinez").[19] Mr. Reasoner and Mr. Cordova noted that it was their belief that CTS could assist Plaintiff, but Plaintiff was not receptive to CTS' suggestions and insisted that Microsoft should be consulted.[20] Mr. Martinez informed Mr. Reasoner to *not* open Microsoft ticket.[21] In the following days, Mr. Martinez and other members of the Networking Team diagnosed and resolved some of the domain controller problems.[22]

On February 9, 2016, Mr. Antill, the Director of IT, issued a warning notice to Plaintiff for her failure to follow the internal policy that supervisors must first authorize expense requests and for deficient work.[23] During the meeting that included Plaintiff, Mr. Antill and Mr. Martinez, Mr. Antill also instructed Plaintiff *not* to seek assistance outside of IT, including but not limited to CTS, with her work without first obtaining authorization from him or Mr. Martinez.[24]

---

[13] Exhibit A, ¶ 4.
[14] Exhibit A, ¶ 5; Exhibit B, ¶ 3.
[15] Exhibit A, ¶ 5.
[16] Exhibit B, ¶ 3; Exhibit B1.
[17] Exhibit A, ¶ 6; Exhibit B, ¶ 3; Exhibit C – Affidavit of Bob Reasoner, ¶ 3.
[18] Exhibit A, ¶ 3; Exhibit B, ¶ 3; Exhibit C, ¶ 3; Exhibit C1.
[19] Exhibit C, ¶ 3; Exhibit D, ¶ 4.
[20] Exhibit B, ¶ 3; Exhibit C, ¶ 3.
[21] Exhibit B, ¶ 3; Exhibit C, ¶ 3; Exhibit D, ¶ 4.
[22] Exhibit A, ¶ 7; Exhibit D, ¶ 5; Exhibit D1.
[23] Exhibit A, ¶ 8; Exhibit A1; Exhibit D, ¶ 6.
[24] Exhibit A, ¶ 8; Exhibit D, ¶ 6.

On February 16 and 17, 2016, Plaintiff consulted with CTS without first obtaining authorization from Mr. Antill or Mr. Martinez.[25] Plaintiff again insisted to CTS the necessity of opening a Microsoft ticket.[26] Mr. Reasoner then contacted Mr. Antill to confirm that IT was in agreement with opening a Microsoft ticket.[27] Mr. Antill reluctantly agreed.[28] A Microsoft ticket was opened at the expense of about $1000, but no resolution to the problems was achieved.[29]

Because of Plaintiff's insubordination (failure to first seek authorization to use outside assistance), failure to follow policy (failure to first seek authorization prior to making request for expenditure), and deficient work, Mr. Antill issued a second warning notice to Plaintiff on March 2, 2016.[30] The second warning included a two day suspension due to the insubordination. Plaintiff was also warned that she must show immediate improvement in her work.[31] The warning notice was delayed until March 2, 2016, because the impending primary elections on March 1, 2016 required all staff to be present to resolve any issues that might arise.[32]

On or about March 22, 2016, Plaintiff filed an EEOC charge complaining of the reprimand she received on February 9, 2016, the two day suspension she received on March 2, 2016, and of an unspecified "retaliation."[33] The EEOC dismissed the charges.

On or about May 31, 2016, after additional deficiencies in Plaintiff's work were observed, Plaintiff's employment was terminated.[34] In the past, whenever asked how her work was progressing, Plaintiff would answer that everything is fine.[35] Some of the deficiencies observed

---

[25] Exhibit A, ¶ 9; Exhibit B ¶ 4; Exhibit C, ¶ 5; Exhibit D, ¶ 7.
[26] Exhibit A, ¶ 9; Exhibit B, ¶ 4; Exhibit C, ¶ 5; Exhibit D, ¶ 7.
[27] Exhibit A, ¶ 9; Exhibit C, ¶ 5.
[28] Exhibit A, ¶ 9; Exhibit C, ¶ 5.
[29] Exhibit A, ¶ 9; Exhibit B, ¶ 4, 5; Exhibit C, ¶ 6; Exhibit D, ¶ 7.
[30] Exhibit A, ¶ 10, 12; Exhibit D, ¶ 8.
[31] Exhibit A, ¶ 12; Exhibit D, ¶ 8.
[32] Exhibit A, ¶ 10.
[33] Exhibit G.
[34] Exhibit A, ¶ 13.
[35] Exhibit A, ¶ 13.

included, but are not limited to replication failure between local and remote domain controllers, failure to upgrade/migrate old servers running software no longer supported by Microsoft, and failure to backup servers.[36] The failure to backup servers was especially egregious in light of the County Clerk Office's duty to keep decades of County records.[37]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that Summary Judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2019). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). The court must view evidence introduced and all factual inferences from the evidence in the light most favorable to the nonmoving party. *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). To avoid Summary Judgment, the nonmoving party must go beyond pleadings and provide admissible evidence which creates an issue of fact concerning the existence of every essential component of that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Factual controversies are resolved in favor of the nonmovant only when there is an actual controversy, meaning both parties have submitted evidence of contradictory facts. *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

## STATEMENT OF ISSUES

Harris County presents the following issues:

(1)   Should the Court dismiss Plaintiff's cause of action based on termination due to the fact that she failed to preserve said cause of action by failing to exhaust her administrative remedies?

---

[36] Exhibit A, ¶ 13; Exhibit A3.
[37] Exhibit A, ¶ 13; Exhibit A3.

(2)  Should the Court dismiss Plaintiff's causes of action based on the written reprimand and suspension, because Plaintiff cannot make a *prima facie* case of Title VII gender discrimination?

(3)  Should the Court dismiss all of Plaintiff's gender discrimination Title VII claims because Harris County had a legitimate and non-discriminatory reason to take the actions against Plaintiff, and Plaintiff has no evidence to show pretext?

(4)  Should the Court dismiss Plaintiff's claim for retaliation because she failed to exhaust her administrative remedy, cannot make a *prima facie* case, and cannot rebut the legitimate non-discriminatory reasons for the employment action taken against her?

## ARGUMENT AND AUTHORITIES

**(1)  Plaintiff failed to exhaust her administrative remedies as to her Title VII gender discrimination claim based on termination**

An employment discrimination plaintiff must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir. 1996). A plaintiff wishing to bring a Title VII lawsuit must first file an EEOC charge within 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).[38]

In our present case, Plaintiff filed an EEOC charge on or about March 22, 2016 alleging Title VII discrimination for being "unfairly written up" on February 9, 2016, and for being "suspended for two days without pay" on March 2, 2016.[39] However, Plaintiff failed to file an EEOC charge regarding her employment termination which took place on May 31, 2016. Plaintiff had until November 27, 2016 (180 days) or May 27, 2017 (300 days) to file an EEOC charge regarding the termination. It is undisputed that Plaintiff failed to do so.

In determining whether or not an EEOC charge has preserved a specific claim, courts look

---

[38] Pursuant to 42 USC § 2000e-5(e)(1), the 180 days can be extended to 300 days under limited circumstances.
[39] Exhibit G.

at the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970). Clearly, in our case, the EEOC investigation regarding the write up and suspension could *not* have grown out to incorporate the employment termination, because the termination had *not* even taken place at the time Plaintiff filed her EEOC charge. *Fine v. GAF Chemical Corp.,* 995 F.2d 576, 577–78 (5th Cir.1993)(plaintiff's administrative remedies were *not* exhausted with respect to an incident of gender discrimination, because the incident sued upon was separate from the one raised in her EEOC charge). Because Plaintiff failed to exhaust her administrative remedies on the termination claim, and the time period has expired, Plaintiff's claim regarding her employment termination must be dismissed with prejudice.

**(2)    Plaintiff cannot make a prima facie case of gender discrimination regarding the written reprimand and the suspension she received.**

Plaintiff bears the ultimate burden of persuasion that she has been the victim of gender discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993). If Plaintiff is unable to establish gender discrimination through direct evidence or by establishing a *prima facie* case, then her gender discrimination claim fails. Plaintiff carries the initial burden of establishing a *prima facie* case of gender discrimination by showing that employees not in plaintiff's protected female class were treated more favorably under circumstances "nearly identical" to hers. *Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

The employment actions being compared can be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job/responsibilities, shared the same supervisor, had their employment status determined by the same person, and have essentially comparable work-rule violation history. *Id.* (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Importantly, a plaintiff "is required to show that his conduct that

drew the adverse employment decision [was] *nearly identical* to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Moghalu v. Bd. of Supervisors for the Univ. of Louisiana Sys. For Nw.,* 643 Fed. Appx. 326, 331 (5th Cir. 2016).

In our case, notwithstanding the termination claim, Plaintiff complains of two adverse employment actions – (1) a February 9, 2016 write up for defective work and failure to follow office procedures; and (2) a May 2, 2016 two days suspension for insubordination, defective work, and failure to follow office procedures. Plaintiff cannot make a *prima facie* case of gender discrimination regarding the write up and the suspension.

In regards to the Warning Notice of February 9, 2016, Plaintiff received a written reprimand for failing to follow long-standing policy that staff members obtain approval from their supervisors prior to making requests for expenditures and defective work.[40] The events leading up to the written reprimand of February 9, 2016 were previously discussed in more detail under "Factual Background."

In regards to the Warning Notice of March 2, 2016, Plaintiff was suspended due to her insubordination, failure to follow policy regarding requests for expenditures, and defective work.[41] The events leading up to the suspension of March 2, 2016 were previously discussed in more detail under "Factual Background."

During the discovery process, Plaintiff was asked to identify any instances that employees outside of her protected class (males) were treated more favorably than Plaintiff during the period of Plaintiff's employment under the supervision of Mr. Antill. Plaintiff identified three alleged incidents with male employees Luis Ovalle, Joel Garrett, and Henry Helaire.

Plaintiff alleged that Luis Ovalle ("Mr. Ovalle") failed to perform his duties, but was not

---

[40] Exhibit A1 - Warning Notice Report dated February 9, 2016; Exhibit A, ¶ 5 – 8; Exhibit D, ¶ 4 – 6.
[41] Exhibit A2 – Warning Notice Report dated March 2, 2016; Exhibit A, ¶ 9 – 10, 12; Exhibit D, ¶ 7 – 8.

disciplined by Mr. Antill.[42] Even if the Court accepts Plaintiff's allegation as true, Mr. Ovalle's situation differs from Plaintiff, because the situation dealt solely with deficient work. Plaintiff's situations dealt with defective work, *and* failure to follow policy, *and* insubordination. The duty assigned to Mr. Ovalle had previously been Plaintiff's duty, and as Mr. Antill testifies, Mr. Ovalle informed Mr. Antill that he was unable to perform the work because he could not resolve all the deficiencies that he found with Plaintiff's work.[43]

Likewise, Plaintiff alleges that Joel Garrett ("Mr. Garrett") was unable to correctly perform a task assigned to him by Mr. Antill, but was not disciplined by Mr. Antill.[44] Similar to Mr. Ovalle's situation, even if the Court accepts Plaintiff's allegation as true, Mr. Garrett's situation differs from Plaintiff, because his situation dealt only with deficient work. Mr. Garrett's situation did not involve failure to follow policy and insubordination. Mr. Antill testified that he verbally reprimanded Mr. Garrett, who acknowledged the deficiency of his work and stated that it would not happen again.[45]

The last purported comparator identified by Plaintiff is Henry Helaire ("Mr. Helaire"). Plaintiff alleges that a female employee was demoted when sexually explicit material involving the female employee was discovered in the network server and Mr. Helaire's workstation.[46] Plaintiff alleges that Mr. Helaire was not disciplined and was allowed to "retire."[47] Once more, even if the Court accepts Plaintiff's allegation as true, Mr. Helaire's situation is significantly different than Plaintiff's. For starters, the demoted female employee was *not* supervised by Mr. Antill and was *not* disciplined by Mr. Antill.[48] Moreover, because Mr. Helaire violated Harris

---

[42] Exhibit F, answer to interrogatory 8, page 6 of 11; answer to interrogatory 11, page 8 of 11.
[43] Exhibit A, ¶ 14.
[44] Exhibit F, answer to interrogatory 6, page 6 of 11; answer to interrogatory 8, page 6 of 11.
[45] Exhibit A, ¶ 15.
[46] Exhibit F, answer to interrogatory 5, page 5 of 11.
[47] Exhibit F, answer to interrogatory 5, page 5 of 11.
[48] Exhibit A, ¶ 16; Exhibit A5.

County policy of no pornography in Harris County property, Mr. Helaire was informed by Mr. Antill that he could either quit or be fired.[49] Mr. Helaire chose to quit.[50] The female employee, who was not supervised by Mr. Antill, was not responsible for placing the sexually explicit material in County property.[51] Rather, as noted in the Written Warning issued to her, she was transferred from the department and demoted due to the inappropriate relationship between her and Mr. Helaire.[52]

Plaintiff cannot establish a *prima facie* case of gender discrimination by showing that male employees were treated more favorably than her under circumstances "nearly identical" to hers. Accordingly, her claim of gender discrimination regarding the written reprimand and the suspension must be dismissed with prejudice.

**(3)** **Plaintiff has no evidence to show pretext in light of the legitimate, non-discriminatory reasons for Harris County to discipline and eventually terminate Plaintiff's employment.**

Even if Plaintiff could establish a *prima facie* case of gender discrimination regarding the adverse employment actions that she complains about, Harris County can rebut the presumption of unlawful gender discrimination by showing reasons for its actions that support a finding that the alleged unlawful gender discrimination was not the cause of the employment action. *St. Mary's Honor Center,* 509 U.S. at 507. Plaintiff bears the ultimate burden of persuasion that she has been the victim of intentional gender discrimination. *Id.* at 508. Once the legitimate non-discriminatory reasons are presented, Plaintiff can show that the reasons were pretext for discrimination by showing that the reason was false *and* that gender discrimination was the real reason. *Id.* at 515.

As noted previously in the testimony of Mr. Antill, Mr. Martinez, Mr. Cordova, Mr.

---

[49] Exhibit A, ¶ 16.
[50] Exhibit A, ¶ 16; Exhibit A4.
[51] Exhibit A, ¶ 16; Exhibit A5.
[52] Exhibit A5.

Reasoner and supporting documents, Harris County had legitimate and non-discriminatory reasons to issue a written reprimand and suspend Plaintiff. Harris County also had legitimate and non-discriminatory reasons to terminate Plaintiff's employment on May 31, 2016 due to additional work deficiencies observed.[53] Plaintiff cannot show that the reasons proffered by Harris County were false and motivated by gender discrimination. Consequently, Plaintiff's gender discrimination claims must be dismissed.

In the course of discovery, Plaintiff obtained and produced beyond the discovery deadline an affidavit from a Harris County employee with the County Clerk's Office named Forrest Royder IV. Mr. Royder's affidavit reads:

> Shortly after Mark Antill became manager of the IT department, I was having a conversation with him in his office, and I happened to mention Angela English in the course of our conversation. Upon mention of her name, his facial expression became very angry, he clenched his fist and exclaimed 'I want to fire her!' I was taken aback by this statement he'd been managing the department for such a short period of time.[54]

Mr. Antill strongly denies that he made such a statement to Mr. Royder.[55] However, assuming *arguendo* that Mr. Antill made such a statement, the statement is no more than a stray remark. Stray remarks alone are insufficient to defeat summary judgment. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). In *Jackson*, the Fifth Circuit Court of Appeals noted that comments are evidence of discrimination only if they are:

1. Related to the protected class of persons of which the plaintiff is a member;
2. Proximate in time to the complained-of adverse employment decision;
3. Made by an individual with authority over the employment decision at issue; and,
4. Related to the employment decision at issue.

---

[53] Exhibit A, ¶ 13; Exhibit A3.
[54] Exhibit H – Affidavit of Forrest Royder IV dated October 7, 2019 and received by Harris County via e-mail on October 18, 2019.
[55] Exhibit A, ¶ 17.

*Id.* at 380. In *Jackson*, an age discrimination case, Plaintiff Jackson testified that a coworker told him that the Chief Operating Officer Jimmy Phelps stated to the coworker that the coworker would be in charge "when that old, gray-haired fart [referring to Plaintiff Jackson] retired." *Id.* at 380. The Fifth Circuit Court of Appeals held that the statement was a stray remark, because the comment was likely made almost a year before Plaintiff Jackson's termination. *Id.* at 380. Therefore, the comment was wholly unrelated to the termination. *Id.* at 380.

In our case, the alleged comment made by Mr. Antill had no explicit or implicit reference regarding gender. Moreover, the alleged comment was allegedly made shortly after Mr. Antill became the Director of IT on March 16, 2015. Ms. Adams-English's employment was terminated on May 31, 2016, more than 13 months after the alleged comment was made. Therefore, the purported statement has no probative value and is not indicative of pretext.

**(4)** **Plaintiff has no summary judgment evidence to support a claim for retaliation under Title VII. Moreover, the summary judgment evidence shows otherwise.**

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence must satisfy the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, a plaintiff must make a *prima facie* case of retaliation that meets three elements: (1) the employee engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. A plaintiff must set forth proof that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action of the employer." *Univ. v. Texas Southwest Med. Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Plaintiff cannot do so in our case.

In Plaintiff's Third Amended Complaint, she alleges that she was suspended on March 2, 2016 and then eventually terminated on May 31, 2016, because she filed a grievance on or about

March 1, 2016 with the County Clerk's Office for alleged gender discrimination by Mr. Antill.[56] Plaintiff's claim fails because of the following: First, Plaintiff failed to preserve her retaliation claim as to the employment termination, because she never exhausted her administrative remedies by filing an EEOC charge regarding the employment termination.[57] When she filed the EEOC that makes the basis of this lawsuit on March 22, 2016, her employment had not been terminated.[58]

Second, a retaliation claim regarding the suspension she received on March 2, 2016 also fails, because she has no evidence to make a *prima facie* case of Title VII retaliation. Moreover, even if she did, the evidence presented by Harris County shows that decision to suspend her was delayed until March 2, 2016, because the County Clerk's Office needed "all hands on deck" for the March 1, 2016 election.[59] Moreover, the events that lead to the suspension on March 2, 2016 took place on or about February 15 – 17, 2016.[60] Once an employer offers a legitimate non-discriminatory reason that explains both the adverse action and the timing, a plaintiff must offer evidence rebutting that the retaliation was the real motive. Plaintiff cannot do so in our case.

## CONCLUSION AND PRAYER

Harris County prays that the Court enter a take nothing judgment as to Plaintiff's Title VII discrimination claims for gender discrimination and retaliation. Plaintiff failed to exhaust her administrative remedies as to the employment termination. Plaintiff cannot establish a *prima facie* case for gender discrimination for the written reprimand and suspension she received. Plaintiff cannot rebut the legitimate, non-discriminatory reasons Harris County set forth for the written reprimand, suspension and employment termination. Therefore, all of Plaintiff's claim fail as a

---

[56] Doc. 23, page 10 and 11 of 45.
[57] Exhibit G.
[58] Exhibit G; Exhibit A, ¶ 3, 13.
[59] Exhibit A, ¶ 10; Exhibit A2; Exhibit D, ¶ 8.
[60] Exhibit A, ¶ 9 – 10, 12; Exhibit B, ¶ 4 – 5; Exhibit C, ¶ 5 – 6; Exhibit D, ¶ 7.

matter of law, and a take nothing summary judgment as to all of Plaintiff's claims is appropriate.

                                            Respectfully submitted,

| OF COUNSEL: | /S/ Armando S. Chiu |
|---|---|
| | Armando S. Chiu |
| VINCE RYAN | Assistant County Attorney |
| HARRIS COUNTY ATTORNEY | Federal I.D. No. 38696 |
| | State Bar No. 08534000 |
| | 1019 Congress, 15th Floor |
| | Houston, Texas 77002 |
| | Telephone: (713) 274-5345 |
| | Facsimile: (713) 755-8924 |
| | armando.chiu@cao.hctx.net |
| | |
| | Attorney for the Harris County |

### CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2019, a true and correct copy of this pleading was electronically filed with the Court and served pursuant to the Federal Rules of Civil Procedure via ECF, e-mail, and/or certified mail to:

*Via Electronic Filing Service, E-Mail, Certified Mail 9214 8901 9137 2500 1273 06*
Angela Regina Adams-English
9429 Caddo Rd.
Houston, Texas 77078
englishar@yahoo.com

                                      /S/ Armando Chiu
                                      ARMANDO CHIU
                                      Assistant County Attorney